IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–02424–PAB–MDB

ROBERT NOLAN,

      Plaintiff,

v.

JOHN HALEY,
DAVID ENCINAS,
JACE MCCALL,
16TH JUDICIAL DISTRICT ATTORNEY, and
TODD QUICK,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on three Motions: (1) "District Attorney Defendant's Motion to Dismiss Third Amended Complaint" (["District Attorney Motion"], Doc. No. 31); (2) "Defendant Encinias' [sic] Motion to Dismiss Third Amended Complaint" (["Encinas Motion"], Doc. No. 39); and (3) "Defendants John Haley, Jace McCall, and Todd Quick's Motion to Dismiss Plaintiff's Third Amended Prisoner Complaint" (["Haley Motion"], Doc. No. 48). Plaintiff has responded in opposition to all three Motions, and Defendants have replied. (Doc. No. 47; Doc. No. 50; Doc. No. 55; Doc. No. 60; Doc. No. 61; Doc. No. 62.) The Motions have been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 32; Doc. No. 40; Doc. No. 49.) The Court has reviewed the briefs, the case file, and the applicable law. For the reasons set forth

below, the Court **RECOMMENDS** that the District Attorney Motion (Doc. No. 31) be

**GRANTED**, that the Encinas Motion (Doc. No. 39) be **GRANTED**, and that the Haley Motion

(Doc. No. 48) be **GRANTED, in part, and DENIED, in part**.

## STATEMENT OF THE CASE

*Pro se* Plaintiff Robert Nolan ["Mr. Nolan"], an inmate in the custody of the Federal

Bureau of Prisons at the Federal Correctional Institute in Florence, Colorado, brings this lawsuit

under 42 U.S.C. § 1983, asserting Fourth Amendment malicious prosecution claims against The

16th Judicial District Attorney's Office ["District Attorney Defendant"]; the Bent County

Sheriff, David Encinas ["Defendant Encinas"]; and three La Junta Police Department

employees—Detective John Haley ["Defendant Haley"], Officer Jace McCall ["Defendant

McCall"], and Chief Todd Quick ["Defendant Quick"]. (Doc. No. 20 at 2-32.)

Mr. Nolan's claims arise out of his 2018 federal indictment on seven felony drugs and

weapons charges. (Doc. No. 31-1.) In his Third Amended Complaint, Mr. Nolan alleges that

Defendants caused him to be prosecuted on those charges without probable cause. (Doc. No. 20

at 23-29.) Mr. Nolan alleges, specifically, that Defendants improperly coerced an unreliable

confidential informant, Juan Ortega, to cooperate in the underlying criminal investigation; that

they fabricated affidavits to obtain invalid search warrants; and that they then used those

defective warrants as a pretextual justification to illegally search through Mr. Nolan's home and

shop. (*Id.* at 6-32.)

During the searches of Mr. Nolan's home and shop, law enforcement seized quantities of

methamphetamine, cocaine, heroin, and marijuana, as well as multiple firearms. (Doc. No. 20-1

at 1; Doc. No. 20-3 at 7.) As a result, Mr. Nolan was taken into custody, and on June 21, 2018, a

federal grand jury returned a seven-count indictment against him, charging him with the following offenses: (1) 21 U.S.C. § 841(a)(1) – knowing and intentional possession of less than five grams of methamphetamine with intent to distribute; (2) 18 U.S.C. § 922(g)(1) – felon in possession of a firearm; (3) 21 U.S.C. § 841(a)(1) – knowing and intentional possession of fifty grams or more of methamphetamine with intent to distribute; (4) 21 U.S.C. § 841(a)(1) – knowing and intentional possession of heroin with intent to distribute; (5) 21 U.S.C. § 841(a)(1) – knowing and intentional possession of marijuana with intent to distribute; (6) 21 U.S.C. § 841(a)(1) – knowing and intentional possession of cocaine with intent to distribute; and (7) 18 U.S.C. § 924(c)(1)(A) – carrying a firearm during the commission of a drug trafficking offense. (Doc. No. 31-1.) Count 1 of the indictment was based on a controlled buy between Mr. Nolan and Mr. Ortega that predated the issuance of the two search warrants, while Counts 2-7 were based on items seized during the execution of those search warrants. (Doc. No. 20-1 at 1.)

Following his indictment, Mr. Nolan's defense counsel filed a motion to suppress "all evidence obtained as a result of the unlawful searches of Mr. Nolan's home and shop based on constitutionally invalid search warrants," as well as a motion in limine to preclude admission of all statements made by the confidential informant, Mr. Ortega. (*Id.*; Doc. No. 31-4 at 3.) The motion to suppress was subsequently granted as to the search of Mr. Nolan's shop, but denied as to the search of Mr. Nolan's home. (Doc. No. 31-3 at 3; Doc. No. 31-4 at 2.) The motion in limine was also denied. (Doc. No. 31-4 at 3.)

After a three-day trial, on January 24, 2019, a jury found Mr. Nolan not guilty as to the first count of the indictment, and guilty as to all remaining counts. (Doc. No. 31-5 at 2-4.) The Tenth Circuit subsequently affirmed the denial of the motion to suppress evidence seized from

Mr. Nolan's home, and by extension, Mr. Nolan's conviction. *United States v. Nolan*, 854 F. App'x 977, 981 (10th Cir. 2021). Mr. Nolan is currently serving a multi-year prison sentence in connection with the charged offenses for which he was convicted.

Based on the foregoing events, on September 7, 2021, Mr. Nolan commenced this § 1983 lawsuit. (Doc. No. 1.) On April 20, 2022, Mr. Nolan filed a Third Amended Complaint, asserting claims under the First, Fourth, Fifth, and Fourteenth Amendments against the five named Defendants and John and Jane Does 1-25. (Doc. No. 20.) After an initial screening under 28 U.S.C. § 1915A, the majority of Mr. Nolan's claims were dismissed as legally frivolous. (Doc. No. 25.) Mr. Nolan's remaining Fourth Amendment malicious prosecution claims against the five named Defendants were then drawn to a district judge and a magistrate judge. (*Id.*)

Defendants now move to dismiss Mr. Nolan's remaining claims against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 31 at 1; Doc. No. 39 at 1; Doc. No. 48 at 1.) Defendants argue, among other things, that Mr. Nolan's claims are barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), by the doctrine of collateral estoppel, and by the applicable statute of limitations. (Doc. No. 31 at 10; Doc. No. 39 at 9; Doc. No. 48 at 4-8.) In addition, Defendants each argue that they are entitled to qualified immunity and/or prosecutorial immunity in this case. (Doc. No. 31 at 11-12; Doc. No. 39 at 10; Doc. No. 48 at 8-14.)

## STANDARDS OF REVIEW

### I.    *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

## III.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court typically may not look beyond the pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "If, on a motion

under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)) (alterations omitted). "Pleadings," for purposes of a Rule 12(b)(6) motion to dismiss, include attachments to the complaint, documents incorporated into the complaint by reference, and information subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the complaint, central to the plaintiff's claims, and not challenged as inauthentic. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *accord Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013).

Here, Defendant Encinas and the District Attorney Defendant have attached several documents to their respective Motions, including Mr. Nolan's indictment, a motion to suppress filed by Mr. Nolan's defense attorney in the underlying criminal proceeding, several orders issued by the trial court in the underlying criminal proceeding, and the jury verdict form. (Doc. No. 31-1; Doc. No. 31-2; Doc. No. 31-3; Doc. No. 31-4; Doc. No. 31-5; Doc. No. 39-1; Doc. No. 39-2; Doc. No. 39-3; Doc. No. 39-4; Doc. No. 39-5.) These documents are all court filings that are subject to judicial notice. *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979); *accord United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). Mr. Nolan does not object to the authenticity of the documents, several of which are attached to his own Third Amended Complaint. (Doc. No. 20-1; Doc. No. 20-2.) Therefore, the documents will be considered in connection with the pending motions to dismiss. *GFF Corp.*, 130 F.3d at 1384; *see*

*Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003) (taking judicial notice of court records concerning a § 1983 plaintiff's criminal conviction); *Martinez v. Caggiano*, No. 20-cv-00280-PAB-KMT, 2021 WL 915950, at *1 n.2 (D. Colo. Mar. 10, 2021) (same).

## ANALYSIS

### I.      Eleventh Amendment Immunity

Mr. Nolan alleges that the District Attorney Defendant—which he refers to as the "16th Judicial District Attorney," "The 16th Judicial District Attorney's Office," and "the Otero County District attorneys [sic] office"—violated his Fourth Amendment rights by "directly participat[ing]" in the interrogation of an individual at the La Junta Police Department on February 6, 2018, and then "authorizing and approving the use of" that individual as a confidential informant in Mr. Nolan's underlying criminal investigation, despite knowing that the individual was "under the influence of drugs, untruthful, unreliable, and clearly not suitable to be utilized as a [confidential informant]." (Doc. No. 20 at 1, 3, 26-28.)

It is unclear whether Mr. Nolan intends to sue the District Attorney's Office, or the individual District Attorney. To the extent that Mr. Nolan is suing the District Attorney's Office, *i.e.,* a governmental entity, the District Attorney Defendant argues that Mr. Nolan's claims are barred by the Eleventh Amendment. (Doc. No. 31 at 8-9.) The Court agrees.

The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It has been interpreted to bar any action brought against a state in federal court, including suits initiated by a state's own citizens. *Johns*

*v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Eleventh Amendment immunity extends to states and state entities deemed "arms of the state," but not to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). Absent a waiver, states and their agencies are entitled to Eleventh Amendment immunity, regardless of the type of relief sought. *Id.* at 1252-53 (citing *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *Wis. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998)); *see Hunt v. Colo. Dep't of Corrs.*, 271 F. App'x 778, 780-81 (10th Cir. 2008) (observing that Eleventh Amendment immunity may be waived either by an act of Congress, or by the state itself "through a clear expression of its intent to waive").

District attorneys' offices in Colorado are state agencies that are entitled to Eleventh Amendment immunity. *Rozek v. Topolniki*, 865 F.2d 1154, 1158 (10th Cir. 1989) (holding that Eleventh Amendment immunity extends to the Office of the District Attorney in Colorado); *Carbajal v. McCann*, 808 F. App'x 620, 638 (10th Cir. 2020) ("Our binding precedent holds that district attorneys' offices in Colorado enjoy Eleventh Amendment immunity."). The Colorado Supreme Court had repeatedly held that district attorneys are executive officers of the state. *See, e.g.*, *Davidson v. Sandstrom*, 83 P.3d 648, 655 (Colo. 2004); *Beacom v. Bd. of Cnty. Comm'rs*, 657 P.2d 440, 445 (Colo. 1983). Further, Congress did not abrogate state sovereign immunity through its promulgation of 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Accordingly, Mr. Nolan's claims against the District Attorney's Office are barred by the Eleventh Amendment. *See Colo. Springs Fellowship Church v. City of Colo. Springs*, No. 21-cv-1368-WJM-MEH, 2022 WL 344895, at *5 (D. Colo. Feb. 4, 2022) (dismissing § 1983 claims

asserted against a Colorado district attorney's office as barred by the Eleventh Amendment);
*Schmier v. Colo. Springs Police Dep't*, No. 10-cv-02297-BNB, 2010 WL 4340441, at *2 (D. Colo. Oct. 26, 2010) (same). The Court, therefore, recommends that those claims be dismissed without prejudice, under Rule 12(b)(1), for lack of jurisdiction. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) ("Because Eleventh Amendment immunity is jurisdictional, th[e] dismissal should [be] without prejudice.").

## II.      The Individual Capacity Claims

### A. Defendant Quick

Mr. Nolan alleges that Defendant Todd Quick, the La Junta Police Department Chief of Police, violated his Fourth Amendment rights, by "approving the use of the [confidential informant], who was not suitable to be used," by failing to adequately train, supervise, and discipline his subordinates, and by "directly participating in the processing of evidence seized from [Mr. Nolan] by his subordinates." (Doc. No. 20 at 3, 30-32.) Defendant Quick moves to dismiss these claims, arguing that Mr. Nolan has failed to plausibly allege his personal participation in any constitutional injury. (Doc. No. 48 at 9.)

Personal participation is an essential element of a § 1983 claim. *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011). To establish personal participation, a plaintiff must show how the defendant caused the deprivation of a federal right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In other words, an affirmative link must exist between the alleged constitutional violation and the defendant's participation, control, direction, or failure to supervise. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006).  Supervisory status, alone, is insufficient to

support such a claim. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see Brown*, 662 F.3d at 1163 ("Section 1983 does not authorize liability under a theory of respondeat superior.").

Here, Mr. Nolan alleges that Defendant Quick, as the La Junta Police Chief, "was responsible for the day to day [sic] operations" of the La Junta Police Department, and "directly supervise[d]" Defendants Haley and McCall. (Doc. No. 20 at 31.) The only specific allegations regarding Defendant Quick are that he "directly Participated [sic] in locating a vehicle driven by Juan Ortega," that he "later approved [the] use" of Mr. Ortega as a confidential informant, and that he "directly participated in the processing of evidence seized from [Mr. Nolan] by his subordinates." (*Id.* at 30-32.)

These allegations fail to show the requisite amount of personal involvement by Defendant Quick to state a claim under § 1983. Specifically, Mr. Nolan has not alleged that Defendant Quick had any direct contact with him, that Defendant Quick was present during any alleged violation of his constitutional rights, or that Defendant Quick was aware that Mr. Ortega was "not suitable" as a confidential informant. Nor has Mr. Nolan alleged any facts that suggest an affirmative link between Defendant Quick's supervision and the conduct of any subordinate. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("[A] plaintiff must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates."). For instance, the Third Amended Complaint is devoid of any allegations suggesting that Defendant Quick personally directed his subordinates to build a criminal case against Mr. Nolan, or to seize particular evidence from him, or to falsify search warrant affidavits. *See Dodds v. Richardson*, 614 F.3d 1185, 1212 (10th Cir. 2010) (concurrence) (discussing standards for supervisory

liability). Mr. Nolan has likewise failed to allege that Defendant Quick acted with "deliberate indifference" to the conduct of his subordinates. *See Serna*, 455 F.3d at 1151 ("Because mere negligence is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur.") (alterations omitted). Finally, there are no allegations from which to infer that Defendant Quick violated Mr. Nolan's rights, because of any *specific* policy. *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (observing that supervisory liability can be imposed "upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects" a plaintiff to constitutional rights deprivations) (alterations omitted).

In this case, Mr. Nolan's conclusory allegations show only a possible indirect involvement by Defendant Quick, and fail to allege the necessary personal participation required for individual liability under § 1983. For that reason, it is recommended that the remaining claims against Defendant Quick be dismissed without prejudice. *See Reyndoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### B. The Remaining Defendants

#### 1. The Applicability of *Heck*

Mr. Nolan alleges that Defendants Encinas, Haley, McCall, and the District Attorney Defendant violated his Fourth Amendment rights "by initiating a legal process that was wrongful," and which resulted in Mr. Nolan's "lengthy detention." (Doc. No. 20 at 23, 26-28.) Defendants argue that these claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

(Doc. No. 31 at 10; Doc. No. 39 at 9; Doc. No. 48 at 6-7.) In *Heck*, the United States Supreme

Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87. Thus, *Heck* precludes a plaintiff from bringing a claim under § 1983

when a favorable decision on that claim would "necessarily imply the invalidity of his conviction

or sentence." *Id.* at 487; *see Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (clarifying that the

rule from *Heck* is not limited to § 1983 claims for damages, but applies regardless of the type of

relief sought). "The purpose behind *Heck* is to prevent litigants from using a § 1983 action, with

its more lenient pleading rules, to challenge their conviction or sentence without complying with

the more stringent exhaustion requirements for habeas actions." *Butler v. Compton*, 482 F.3d

1277, 1279 (10th Cir. 2007) (citing *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004)).

"The starting point for the application of *Heck* [] is the existence of an underlying

conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Id.* "In other

words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be

directly invalidating." *Id.* Importantly, and as already touched upon, the *Heck* bar operates only

when "a judgment in favor of the plaintiff would necessarily imply the invalidity of [the

plaintiff's outstanding] conviction or sentence." *Heck*, 512 U.S. at 487. Conversely, "if the

district court determines that the plaintiff's action, even if successful, will *not* demonstrate the

invalidity of any outstanding criminal judgment against the plaintiff, the action should be

allowed to proceed, in the absence of some other bar to the suit." *Id.* To determine whether *Heck* applies to Mr. Nolan's claims here, the Court first considers the criminal offenses on which Mr. Nolan was convicted.

Mr. Nolan was convicted on five contraband possession charges, which were based on evidence seized during the search of Mr. Nolan's home.[1] (Doc. No. 31-5; Doc. No. 20-1 at 1.) The search of Mr. Nolan's home was conducted pursuant to a search warrant. (Doc. No. 20-2.) The Tenth Circuit affirmed the validity of that search, as well as Mr. Nolan's conviction, on appeal. *Nolan*, 854 F. App'x at 981. Mr. Nolan does not allege, either in the Third Amended Complaint or in his response briefing, that he obtained a favorable termination of the charges on which he was convicted. (*See generally* Doc. No. 20, Doc. No. 47; Doc. No. 55; Doc. No. 61.)

### a. Claims that are Barred by *Heck*

The allegations forming the basis of Mr. Nolan's malicious prosecution claims against Defendants Encinas, Haley, and the District Attorney Defendant are as follows: (1) that Defendants Encinas, Haley, and the District Attorney Defendant each "directly participated" in the February 6, 2018 interrogation of Juan Ortega, during which they used "coercive and deceptive tactics" to get Mr. Ortega to agree to serve as a confidential informant in Mr. Nolan's underlying criminal investigation, despite knowing that Mr. Ortega was "under the influence of drugs, untruthful, unreliable, and clearly not suitable to be utilized as a [confidential informant];" (2) that Defendant Haley then "prepare[d] and fabricate[d]" a "controlled buy" of methamphetamine between Mr. Ortega and Mr. Nolan so as to "create[e] the illusion" that there

---

[1] The evidence seized from Mr. Nolan's shop was suppressed before trial, and thus, did not play a role in Mr. Nolan's conviction.  (Doc. No. 31-3 at 3.)

was probable cause for Mr. Nolan's arrest, as well as to obtain search warrants of Mr. Nolan's

property; and (3) that Defendant Haley used this "fabricated false evidence" to secure a warrant

for the search of Mr. Nolan's home. (Doc. No. 20 at 6, 14-16, 22-28.)

Underlying each of these allegations is a challenge to the legality of the search of Mr.

Nolan's home. In essence, Mr. Nolan calls into question whether there was probable cause for

the warrant that was used to effect that search. Mr. Nolan's allegations, if true, would necessarily

imply the invalidity of his criminal conviction, because the evidence seized in the search of Mr.

Nolan's home led directly to his conviction, and evidence seized in an illegal search must be

suppressed. Without the evidence found during the search of Mr. Nolan's home, Mr. Nolan

would not have been convicted. *See Johnson v. Pottawotomie Tribal Police Dep't*, 411 F. App'x

195, 198 (10th Cir. 2011) (affirming the dismissal of § 1983 claims alleging illegal searches as

barred by *Heck*, where the plaintiff's claims "would necessarily imply the invalidity of his

sentence because it would have been based upon evidence gathered during an illegal arrest and

thus would have to be suppressed"); *Beals v. Fields*, No. CIV-16-1182-C, 2016 WL 8376570, at

*3 (W.D. Okla. Dec. 23, 2016) (finding that if the plaintiff prevailed on his § 1983 claims

alleging the improper use of a confidential informant and illegal searches "the outcome would

necessarily imply the invalidity of his conviction and sentence because the evidence seized in the

search led directly to his conviction, and evidence seized in an illegal search must be

suppressed"), *report and recommendation adopted by* 2017 WL 782927 (W.D. Okla. Feb. 28,

2017); *Miller v. Foster*, No. 12-cv-02525-RM-MJW, 2013 WL 7894943, at *2-3 (D. Colo. Nov.

18, 2013) (finding that the plaintiff prevailing on his § 1983 claim would necessarily imply the

invalidity of his conviction for possession of a controlled substance because "the baggy of crack

cocaine was uniquely made available as a result of the alleged illegal search," and the state could not "have convicted him if the search were to have been found illegal"), *report and recommendation adopted by* 2014 WL 924242 (D. Colo. Mar. 10, 2014).

Mr. Nolan's claims against Defendants Encinas, Haley, and the District Attorney Defendant are, therefore, precisely the type of civil rights claims that *Heck* bars. Mr. Nolan has not demonstrated that any forum, state or federal, has invalidated his conviction. Under *Heck*, then, Mr. Nolan's malicious prosecution claims against Defendants Encinas, Haley, and the District Attorney Defendant should be dismissed without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice.").

Mr. Nolan attempts to avoid *Heck* by arguing that the jury acquitted him on the first count of his indictment, which was a drug possession charge arising from the controlled buy with Mr. Ortega. (Doc. No. 55 at 3; Doc. No. 61 at 3.) According to Mr. Nolan, *Heck* does not bar his malicious prosecution claims insofar as they relate to the acquitted charge, which Mr. Nolan refers to as the "underlying Primary charge." (Doc. No. 20 at 23.) As part of the same jury trial, however, Mr. Nolan was convicted on the remaining charges, all of which were based on the drugs and weapons seized pursuant to the search of Mr. Nolan's home. (Doc. No. 31-5.) Because Mr. Nolan's conviction on those charges has not since been invalidated, his § 1983 claims against Defendants Encinas, Haley, and the District Attorney Defendant, all of which implicate the validity of the search of Mr. Nolan's home, remain barred by *Heck*. *See Wheeler v. Scarafiotti*, 85 F. App'x 696, 700 (10th Cir. 2004) (affirming the dismissal of a malicious prosecution claim under *Heck*, where the underlying criminal charges on which the plaintiff was

convicted and acquitted arose out of the same events and "were based on the same finding of probable cause and the same testimony at trial"); *Cottle v. Gillespie*, No. 2:10-CV-00271-JCM-(PAL), 2010 WL 5477410, at *1 n.1 (D. Nev. Dec. 30, 2010) (stating that, where a plaintiff has been convicted of some charges and acquitted of others, if the "allegations of false statements relate to the charges on which he has been convicted, then success on those counts would necessarily imply the invalidity of his conviction"); *Jackson v. Cnty. of Nassau*, No. 07-cv-245 (JFB)(AKT), 2010 WL 1849262, at *3 (E.D.N.Y. May 6, 2010) ("Despite plaintiff's acquittal on several counts, *Heck v. Humphrey* applies to plaintiff's lawsuit because plaintiff's claims and arguments are not focused around particular charges or counts of which he was acquitted; rather, his claims against the County are based upon alleged violations by Officer Hughes and Detective Comiskey that affected his trial in general."); *see also Johnson v. Heinis*, No. 11-cv-03135-WJM-KLM, 2012 WL 4748037, at *2 (D. Colo. May 31, 2012) (finding "the interrelatedness" between the charges on which the plaintiff was convicted and the charges on which he was convicted "necessitate[d] the application of *Heck*").

### b. Claims that are Not Barred by *Heck*

Mr. Nolan also alleges that, subsequent to the search of his home, Defendant McCall maliciously prosecuted him by making "fraudulent statements" in a sworn affidavit, which was used to obtain a second search warrant for Mr. Nolan's shop. (Doc. No. 20 at 28-30; *see* Doc. No. 20-3.) By Defendants' own admission, the evidence seized from Mr. Nolan's shop pursuant to that second search warrant "played no role" in Mr. Nolan's conviction. (Doc. No. 48 at 8 ("The allegations Plaintiff now makes against McCall regarding the second search warrant were also addressed by the trial court and were resolved in Plaintiff's favor and, as a result, the second

search warrant played no role in Plaintiff's conviction.").) As such, Mr. Nolan's malicious prosecution claim against Defendant McCall, if successful, would *not* necessarily invalidate his underlying conviction. For that reason, *Heck* does not bar Mr. Nolan's malicious prosecution claim against Defendant McCall. *See Montoya v. City & Cnty. of Denver*, No. 16-cv-01457-JLK, 2021 WL 1244264, at *26 (D. Colo. Mar. 4, 2021) (finding that *Heck* did not bar a § 1983 plaintiff's claims, where "the plaintiff's convictions were unrelated to the wrongful conduct alleged"); *see also Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe an individual committed one crime—and even his conviction of that crime—does not foreclose a malicious prosecution claim for additionally prosecuting the individual on a separate charge.").

### 2. Collateral Estoppel

Defendant McCall argues, in the alternative, that Mr. Nolan's malicious prosecution claim is barred by the doctrine of collateral estoppel. (Doc. No. 48 at 7-8.) "Collateral estoppel, or issue preclusion, is available in actions under §1983." *Williams v. Henderson*, 626 F. App'x 761, 763 (10th Cir. 2015) (citing *Allen v. McCurry*, 449 U.S. 90, 105 (1980)). "Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) (citing *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1136 (10th Cir. 2004)). The doctrine applies when "(1) the issue previously decided is identical with the one presented in the current action; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine was invoked was a party or in privity with a party to the prior litigation[;] and (4) the party against whom the

doctrine is invoked had a full and fair opportunity to litigate the issue in the prior litigation." *Id.* at 1161 (citing *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995)).

Here, Defendant McCall argues that Mr. Nolan is collaterally estopped from asserting a malicious prosecution claim against him, because the allegations that Mr. Nolan makes concerning the second search warrant were "addressed" by the trial court prior to Mr. Nolan's criminal trial, by way of a motion to suppress. (Doc. No. 48 at 8.) Defendant McCall stresses that the motion to suppress was "resolved in [Mr. Nolan]'s favor and, as a result, the second search warrant played no role in [his] conviction." (*Id.*) According to Defendant McCall, "[b]ecause the issues now raised by Plaintiff in his Third Amended Complaint were addressed and resolved prior to this action, he cannot advance them now." (*Id.*) However, as Defendant McCall himself acknowledges, the motion to suppress the second search warrant was resolved in Mr. Nolan's favor. As such, there was no adverse determination by the trial court on the issue Defendant McCall seeks to foreclose, whether Defendant McCall violated Mr. Nolan's Fourth Amendment rights by making false statements in the affidavit supporting the second search warrant. *Moss*, 559 F.3d at 1161. As a result, the principles of collateral estoppel have no application here.

### 3. Statute of Limitations

Defendant McCall also argues that Mr. Nolan's § 1983 claims are time-barred, based on the applicable statute of limitations. (Doc. No. 48 at 4-6.) "Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Torrez v. Eley*, 378 F. App'x 770, 772 (10th Cir. 2010) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

"A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Federal law determines "the date on which the claim accrues and the limitations period starts to run." *Id.* (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). But the length of the limitations period "is drawn from the personal-injury statute of the state in which the federal district court sits." *Id.* (citation omitted). State law also "governs any tolling of that period, except that federal law might also allow additional equitable tolling in rare circumstances." *Id.* (citations omitted).

The applicable statute of limitations for § 1983 claims in Colorado, the forum state here, is two years.[2] *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which suit is brought . . . shall be commenced within two years."); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102(1)(g) to § 1983 claims); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("We have made clear that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued."). Under federal law, "claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (alterations, citation, and internal quotation marks omitted). Because the

---

[2] In his Third Amended Complaint, Mr. Nolan appears to suggest that his § 1983 claims are subject to Colorado's three-year limitations period for claims of fraud, misrepresentation, concealment, or deceit, set forth in § 13-80-101(1)(c) of the Colorado Revised Statutes. (Doc. No. 20 at 32.) The Court finds this argument to be without merit. *See Caballero v. Wyandotte Cnty. Sheriff's Dep't*, 789 F. App'x 684, 686 n.2 (10th Cir. 2019) (rejecting a similar argument made by a § 1983 plaintiff).

"injury" in a § 1983 action "is the violation of a constitutional right," a § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citations omitted); *accord Fogle*, 435 F.3d at 1258 (stating that a § 1983 claim "accrues when facts that would support a cause of action are or should be apparent"). "A claim of malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (citations omitted).

In his Third Amended Complaint, Mr. Nolan alleges that the criminal proceedings terminated in his favor on January 24, 2019, the date on which the jury acquitted him of the first count of the indictment. (Doc. No. 20 at 32.) Accepting these allegations as true, Mr. Nolan's malicious prosecution claim against Defendant McCall accrued, at the latest, on January 24, 2019. *Myers*, 738 F.3d at 1194. Mr. Nolan did not commence this action until September 7, 2021, roughly seven month after the two-year statute of limitations had expired. (Doc. No. 1.) Under these circumstances, Mr. Nolan's claim against Defendant McCall is subject to dismissal as untimely filed, unless equitable tolling applies. *Braxton v. Zavaras*, 614 F.3d 1156, 1160 (10th Cir. 2010).

State law governs equitable tolling in a § 1983 action. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 (10th Cir. 2004). Colorado law allows the equitable tolling of a limitations period "when flexibility is required to accomplish the goals of justice," such as where a plaintiff did not timely file his claims due to "extraordinary circumstances," or where the "defendants' wrongful conduct" prevented the plaintiff from doing so. *Fogle*, 435 F.3d at 1258 (quoting *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004)); *accord*

*Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) ("[E]quitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts."). Extraordinary circumstances are a basis for equitable tolling because "it is unfair to penalize the plaintiff for circumstances outside his or her control." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). "The extraordinary circumstances basis for equitable tolling requires the plaintiff to make a good faith effort to pursue any claims." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000). "Under Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled." *Braxton*, 614 F.3d at 1159-60 (citing *Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 886 (Colo. 2010)). "[T]he exercise of equitable jurisdiction requires an inquiry into the particular circumstances of the case." *Garrett v. Arrowhead Imp. Ass'n*, 826 P.2d 850, 855 (Colo. 1992).

Here, Mr. Nolan argues that his claim should be equitably tolled due to extraordinary circumstances that were beyond his control. (Doc. No. 20 at 32-33; Doc. No. 55 at 1-2.) Specifically, Mr. Nolan alleges that he was unable to timely file his complaint, primarily because of restrictions imposed at his prison facility during the height of the COVID-19 coronavirus pandemic. (*Id.*) Mr. Nolan states that these restrictions, which were "in place from 2020-2022," included a lack of access to the law library, as well as periodic lockdowns during which Mr. Nolan was forced to remain isolated in his prison cell "24 hours a day for several days." (Doc. No. 20 at 33.) Mr. Nolan acknowledges that he did have a "1 year window of opportunity" to file this lawsuit, as COVID-19 prison restrictions only began in early 2020. (Doc. No. 55 at 1.)

However, Mr. Nolan states that he "was represented by appellate counsel during those times, at the direct appeal stages," and as a result, he "did not have the benefit of the client file discs" relating to his criminal case until "approximately June of 2021." (*Id.* at 1-2.) Mr. Nolan states that he was "finally granted access to the law library" for three weeks beginning on August 7, 2021, at which time he was able to review evidence and research case law pertaining to his § 1983 claims. (*Id.* at 2.) Two weeks after completing that research, on September 7, 2021, Mr. Nolan filed this lawsuit. (*Id.*)

Federal courts have concluded, mainly in the context of habeas cases, that "the COVID-19 pandemic 'could – in certain circumstances – conceivably warrant equitable tolling.'" *United States v. Haro*, No. 8:18CR66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020); *compare Cowan v. Davis*, No. 1:19-CV-00745-DAD, 2020 WL 4698968, at *6 (E.D. Cal. Aug. 13, 2020) (finding "the unprecedented and ongoing COVID-19 pandemic" warranted prospective equitable tolling), *with United States v. Barnes*, No. 18-CR-0154-CVE, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19 lockdown beginning in March 2020 "delayed defendant's ability to file his motion" but concluding it did not warrant equitable tolling because the defendant did not demonstrate he diligently pursued his claims when he "could have filed his motion long before" then). To demonstrate entitlement to equitable tolling based on COVID-19-related prison restrictions, a litigant generally must show that he "had been pursuing [his] rights diligently and would have timely filed if not for external obstacles caused by COVID-19." *Mims v. United States*, No. 4:20-CV-1538 RWS, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021); *see Dunn v. Baca*, No. 3:19-CV-702 MMD-WGC, 2020 WL 2525772, at *2 (D. Nev. May 18, 2020) (granting a habeas petitioner's COVID-19-based request for equitable tolling, where there was

"little to no doubt" that the petitioner had been pursuing his rights diligently throughout the

limitations period). However, courts apply the doctrine conservatively, and invocation of

pandemic barriers does not automatically warrant equitable tolling. *See Donald v. Pruitt*, 853 F.

App'x 230, 234 (10th Cir. 2021) (holding that a habeas petitioner was not entitled to equitable

tolling based on his allegedly limited access to the law library in the wake of COVID-19, where

the petitioner failed to show "that he was pursuing his rights diligently throughout the one-year

window, including before the COVID-19 restrictions went into place"); *see also United States v.*

*Henry*, No. 2:20-cv-01821, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line

is that the COVID-19 pandemic does not automatically warrant equitable tolling for any

petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights

diligently *and* that the COVID-19 pandemic specifically prevented him from filing his motion.")

(emphasis in original).

Having extensively reviewed the case law on this issue both within this Circuit and

without, the Court entertains serious doubts as to whether equitable tolling is appropriate in this

case. *See, e.g.*, *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1288 (D. Colo. 2009) ("Colorado courts

have held that the doctrine of tolling is 'not favored,' and the Colorado Supreme Court 'has

never found' the requisite 'extraordinary circumstances' to exist such that tolling could be

applied to a statute of limitations."); *Jackson v. Lumpkin*, No. H-22-586, 2022 WL 2317151, at

*3 (S.D. Tex. June 28, 2022) ("This court and others have held that the intermittent lockdowns

and limited access to the law library resulting from TDCJ's response to the COVID-19 pandemic

do not, without more, constitute an 'extraordinary circumstance' warranting equitable tolling.").

That said, the Court cannot recommend dismissing a *pro se* prisoner's civil rights action at the

pleadings stage based solely on the fact that, during the height of a global pandemic, he filed his complaint seven months late.

Under these circumstances, the Court finds that further development of the record is necessary to determine whether equitable tolling is warranted in this case. *See Rivera v. Mucha*¸ No. 21-CV-316, 2022 WL 1205203, at *5 (D. Conn. Apr. 22, 2022) (declining to dismiss a § 1983 plaintiff's complaint on a Rule 12(b)(6) motion, where the plaintiff's claim for equitable tolling merited "further factual development"); *Holmes v. Baughman*, 2022 WL 298773, at *2 (E.D. Cal. Feb. 1, 2022) ("Because equitable tolling is a fact-specific inquiry, it must be resolved in a motion for summary judgment."); *see also Fogle*, 435 F.3d at 1258-59 (holding allegations that the defendants locked the plaintiff "in his cell 23 hours a day for 5 days a week and 24 hours the other [2] days with no access to, *inter alia*, law library clerks or prison lawyers" might qualify as extraordinary circumstances to justify equitable tolling). At this stage of the proceedings, Mr. Nolan has alleged enough facts to plausibly suggest that he diligently pursued his claims throughout the two-year limitations period, and that COVID-19 prison restrictions impeded his ability to timely file his complaint. *See Nasious v. City & Cnty. of Denver*, 415 F. App'x 877, 882 (10th Cir. 2011) (finding equitable tolling to be justified where extraordinary circumstances were created beyond the plaintiff's control). Mr. Nolan has also provided at least some explanation as to why he could not have filed this lawsuit during the first twelve months after his claims accrued, before COVID-19 prison restrictions were imposed. Therefore, Defendant McCall's request to dismiss Mr. Nolan's § 1983 claims as untimely should be denied.

### 4. Qualified Immunity

Finally, Defendant McCall argues that he is entitled to qualified immunity in this case, because Mr. Nolan has failed to show that he violated his constitutional rights, or that such a right was "clearly established" at the time of the alleged misconduct. (Doc. No. 48 at 8, 10-13.)

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ullery v. Bradley*, 949 F.3d 1282, 1289 (10th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once a defendant has asserted a qualified immunity defense, the burden shifts to the plaintiff to establish that: (1) the defendant violated a constitutional right; and (2) the right was "clearly established" at the time of the defendant's alleged misconduct. *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks omitted).

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas*

*v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Id.* (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)); *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness.") (internal quotation marks omitted) (emphasis in original). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)) (internal quotation marks omitted). The Court has "discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Brown*, 662 F.3d at 1164 (quoting *Pearson*, 555 U.S. at 236) (alterations omitted).

### a. Constitutional Violation

Because Defendant McCall has invoked qualified immunity, the Court considers, first, whether Mr. Nolan has alleged adequate facts from which to infer that Defendant McCall violated his constitutional rights. *Brown*, 662 F.3d at 1164. Here, Mr. Nolan alleges that Defendant McCall maliciously prosecuted him, in violation of his Fourth Amendment rights, by "wantonly and knowingly initiat[ing] a legal process that was wrongful." (Doc. No. 20 at 28.)

To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2)

the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)). The "favorable termination" element only requires a plaintiff to show that his criminal prosecution "ended without a conviction."[3] *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). Here, Defendant McCall argues that Mr. Nolan has failed to plausibly allege the second and third elements of his malicious prosecution claim. (Doc. No. 48 at 10-12.)

As to the second element, Defendant McCall argues that Mr. Nolan "cannot show the underlying criminal proceedings terminated in his favor," because "a federal jury conclusively answered the questions of [Mr. Nolan]'s guilt or innocence, finding him guilty on six of seven criminal counts related to the sale and distribution of narcotics and possession of a firearm." (*Id.* at 10.) However, Mr. Nolan's malicious prosecution claim against Defendant McCall is based exclusively on Defendant McCall's actions in procuring the second search warrant. (Doc. No. 20 at 28-30.) The evidence seized pursuant to the second search warrant was ultimately suppressed by the trial court, and thus, did not play a role in Mr. Nolan's conviction. (*Id.* at 29; *see* Doc. No. 31-3 at 3.) As such, Defendant McCall's malicious prosecution of Mr. Nolan "ended without conviction." *Thompson*, 142 S. Ct. at 1341; *Lehmann v. Zehner*, No. 1:22-cv-00204-CNS-MEH, 2022 WL 11732949, at *6 (D. Colo. Oct. 20, 2022) (finding the second element of a malicious

---

[3] The Tenth Circuit has explained that "there are two termination requirements relevant to a § 1983 malicious prosecution claim. One is the favorable termination requirement that is an element of the malicious prosecution claim itself. The other is the *Heck v. Humphrey* rule that a litigant cannot bring a § 1983 claim challenging a conviction's legitimacy until that conviction has been dismissed." *Montoya v. Vigil*, 898 F.3d 1056, 1066 n.7 (10th Cir. 2018).

prosecution claim to be satisfied, where the plaintiff alleged that "the District Attorney dismissed his case on October 14, 2020"). Accordingly, Mr. Nolan has plausibly alleged the second element of his claim.

As to the third element, *i.e.,* that no probable cause supported the initial prosecution, Defendant McCall argues that the second search warrant was, in fact, supported by probable cause. (Doc. No. 48 at 12.) Defendant McCall contends that "probable cause was conclusively determined when the trial judge permitted the prosecution to proceed to trial," and he stresses that "[a] probable cause finding made by a judge is accorded great deference." (*Id.*) Mr. Nolan, in response, argues that "[t]he issuing judge of said search warrant[] did not have the enlightenment and benefit of information that existed, and facts, as outlined in plaintiffs [sic] complaint." (Doc. No. 55 at 4.)

In the Third Amended Complaint, Mr. Nolan alleges that Defendant McCall "knowingly, intentionally, and fraudulently[] prepared the affidavit," by falsely attributing incriminating statements to a citizen witness, Doug Hasty, even though Mr. Hasty "never mentioned anything incriminating about" Mr. Nolan. (Doc. No. 20 at 29; *see* Doc. No. 20-3 at 7-8.) The motion to suppress the second search warrant, which was filed by Mr. Nolan's defense attorney in the underlying criminal proceeding, and which is attached as an exhibit to the Third Amended Complaint, alleges that Defendant McCall "knowingly bolstered Mr. Hasty's reported information with embellished facts and omitted facts that undermined that information." (Doc. No. 20-1 at 10-11.) Specifically, the motion to suppress alleges that, contrary to Defendant McCall's averments in the second search warrant affidavit, Mr. Hasty "did *not* state that: he believes [Mr. Nolan's] shop contains narcotics; that he's been observing the constant come and

go of narcotics traffic; that he took personal interest in Nolan; that the traffic is damaging the neighborhood; that a wave of drug traffic ensued the one night he followed him to the shop; that Mr. Nolan leaves in the same direction every night; that he's gone for a similar amount of time every night; or that he believes he goes to pick up drugs." (*Id.* at 12.) The motion to suppress goes on to argue that, if Defendant McCall's material "embellishments" and "omissions" were excised from the affidavit, "[t]he result is an affidavit that lacks probable cause." (*Id.* at 13.)

"To impeach an otherwise valid warrant on the ground that it was issued on specified information that was false and critical to the finding of probable cause requires proof that the affiant seeking the warrant knew that the challenged information was false or that he had a reckless disregard for its truthfulness." *Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 114 (10th Cir. 1994) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). Recklessness may be inferred from circumstances that demonstrate "obvious reasons to doubt the veracity of the [affidavit's] allegations." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 908 (10th Cir. 2020) (citation omitted). "Allegations of negligence or innocent mistake are insufficient." *Beard*, 24 F.3d at 114 (quoting *Franks*, 438 U.S. at 171). This standard applies to an officer's decision "to omit from his warrant affidavit information in his possession that is also critical to the showing of probable cause." *Id.*

Here, the Court finds that Mr. Nolan has at least plausibly alleged that Defendant McCall knowingly and/or recklessly gave false information in obtaining the second search warrant. Mr. Nolan has likewise plausibly alleged that, if Defendant McCall's material misstatements and omissions were excised from the affidavit, then there would be no probable cause for the second search warrant, and by extension, the seizure of contraband from Mr. Nolan's shop. The

gravamen of Mr. Nolan's complaint against Defendant McCall is that Defendant McCall's actions in procuring the second search warrant resulted in Mr. Nolan's arrest and prosecution. Mr. Nolan's allegations can be fairly read as showing a lack of probable cause supporting Defendant McCall's actions. Therefore, the Court finds that Mr. Nolan has met his burden of alleging that Defendant McCall violated his constitutional rights.

### b. Clearly Established

Defendant McCall also argues that he is entitled to qualified immunity, because Mr. Nolan cannot "show that his constitutional rights were clearly established at the time of the alleged violation." (Doc. No. 48 at 13-14.) Defendant McCall contends that, in order to do so, Mr. Nolan would need to show that Defendant McCall "lacked even 'arguable probable cause'" when he took action to obtain the second search warrant. (*Id.* at 13 (quoting *Moses-El v. City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *14-15 (10th Cir. May 31, 2022).) Defendant McCall stresses that this is a highly "deferential standard," which would require Mr. Nolan to demonstrate that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." (*Id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011).) However, the basis for Mr. Nolan's claim against Defendant McCall is not that the second search warrant was, at the time of issuance, facially inadequate to demonstrate probable cause for the search of Mr. Nolan's shop. Rather, Mr. Nolan alleges that Defendant McCall intentionally made false statements and omissions in the supporting affidavit, which if corrected, would have negated probable cause for the issuance of the second search warrant. Assuming Mr. Nolan's allegations to be true, as the Court must do under the applicable standard, no reasonable officer could believe that there was probable cause for the second search

warrant at the time that it was issued. *See Beard*, 24 F.3d at 115 ("If, after all, a claimant is able to prove the necessary deliberate falsehood or reckless disregard to impeach a facially valid warrant, the reasonableness inquiry has to be resolved against the defendant since no reasonably competent officer could believe an arrest legal where it was his deliberate or reckless deception that led the magistrate into issuing the warrant."). Therefore, at this stage of the proceedings, Defendant McCall is not entitled to qualified immunity on Mr. Nolan's malicious prosecution claim.

## CONCLUSION

For the reasons set forth herein, this Court respectfully **RECOMMENDS** that:

(1) "District Attorney Defendant's Motion to Dismiss Third Amended Complaint" (Doc. No. 31) be **GRANTED**. Specifically, to the extent that Mr. Nolan asserts claims against the District Attorney's Office, those claims should be **DISMISSED without prejudice**, under Rule 12(b)(1), for lack of subject matter jurisdiction. To the extent that Mr. Nolan asserts claims against the individual District Attorney, those claims should be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a claim.

(2) "Defendant Encinias' [sic] Motion to Dismiss Third Amended Complaint" (Doc. No. 39) be **GRANTED**. Mr. Nolan's claims against Defendant Encinas should be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a claim.

(3) "Defendants John Haley, Jace McCall, and Todd Quick's Motion to Dismiss Plaintiff's Third Amended Prisoner Complaint" (Doc. No. 48) be **GRANTED, in part**, **and DENIED, in part**. Specifically, Mr. Nolan's claims against Defendants Haley and Quick

should be **DISMISSED without prejudice**, under Rule 12(b)(6), for failure to state a

claim. The Motion should be **DENIED** in all other respects.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and

file written objections to the Magistrate Judge's proposed findings and recommendations with

the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. ⸹ 636(b)(1);

Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that

does not put the district court on notice of the basis for the objection will not preserve the

objection for *de novo* review. "[A] party's objections to the magistrate judge's report and

recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121*

*East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely

objections may bar *de novo* review by the district judge of the magistrate judge's proposed

findings and recommendations and will result in a waiver of the right to appeal from a judgment

of the district court based on the proposed findings and recommendations of the magistrate

judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to

review a magistrate judge's recommendation *de novo* despite the lack of an objection does not

preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a

party's objections to the magistrate judge's report and recommendation must be both timely and

specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l*

*Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing

to object to certain portions of the magistrate judge's order, cross-claimant had waived its right

to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

**DATED**: January 10, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge